**Robert A. ERICKSON, Respondent,**

**v.**

**The COUNTY OF CLAY, et al., Appellants,**

**Lyle Usgaard, Defendant.**

**No. C4–89–1633.**

Court of Appeals of Minnesota.

Feb. 27, 1990.

Thomas M. Stieber, James M. Riley, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for respondent.

Kevin J. Rupp, Peter D. Bergstrom, Ratwik, Roszak, Bergstrom, Maloney & Bartel, P.A., Minneapolis, for appellants.

Hubert H. Humphrey III, Atty. Gen., David T. Schultz, Sp. Asst. Atty. Gen., St. Paul, for defendant.

Considered and decided by NORTON, P.J., and HUSPENI and STONE *, JJ.

## OPINION

HUSPENI, Judge.

Respondent Robert A. Erickson sought redress under 42 U.S.C. § 1983 and under theories of defamation, malicious prosecution, negligent supervision of the prosecuting attorney, and vicarious liability. Appel-

lants Clay County and its prosecutors, Larry Mickelberg and Donald Shoop, its investigator Larry Costello and its informant (John Doe) moved to dismiss the complaint under Minn.R.Civ.P. 12.02 for failure to state a claim because of absolute prosecutorial immunity.

The trial court considered matters outside the pleadings and treated appellants' motion as one for summary judgment. Upon finding the existence of disputed facts as to whether appellants were entitled to any immunity for their conduct, the trial court denied the relief requested. We affirm in part and reverse in part.

## FACTS

Respondent Erickson was the city manager of the City of Moorhead, Clay County, Minnesota. Appellant Mickelberg is the Clay County Attorney; appellant Shoop is the Assistant Clay County Attorney who was responsible for grand jury proceedings involving Erickson. Appellant Costello serves in the Clay County sheriff's department and is an investigator for the county attorney's office. Appellant Doe is an informant who communicated to Costello allegations against Erickson.

A Moorhead city councilman was a member of a partnership which owned land near the city. The councilman, who is not a party to this proceeding, was an acquaintance of Erickson. The city eventually purchased the land owned by the councilman. Erickson was involved in the acquisition. When details of the land acquisition were revealed, Erickson became a subject of investigation by the sheriff's department and the Clay county attorney's office. During the investigation, a tip led the sheriff's office to investigate a discount Erickson received from the builder of Erickson's new home.

In the summer of 1988, a grand jury was convened to hear witnesses and consider charges against Erickson and others. The grand jury issued indictments against Er-

---

* Acting as judge of the Court of Appeals by ap- . pointment pursuant to Minn.Const. art. 6, § 2.

ickson in July of 1988.[1] The indictments were signed by defendant Usgaard,[2] the grand jury foreperson and a former city council member whose views often conflicted with those of Erickson.

In September of 1988, the trial court dismissed the indictments against Erickson and barred further prosecution of the claims, finding that at least seven procedural irregularities and violations of procedural rules were committed by the county attorney's office. Those violations include unauthorized participation in grand jury deliberations, permitting unauthorized personnel in the grand jury room, violation of grand jury secrecy by the grand jury foreperson and the prosecutors, and numerous violations of the Minnesota Rules of Criminal Procedure. The trial court also found that the county attorney's office had breached its prosecutorial duty, to the substantial prejudice of Erickson's rights.

The complaint in the suit subsequently brought by Erickson contains eight counts. Each count is analyzed in detail below.

The record on appeal consists of the summons and complaint, appellants' motions for dismissal with supporting memoranda and respondent's memorandum in opposition, and as exhibits, a number of newspaper articles regarding the grand jury proceedings.[3] In denying the motion to dismiss, the trial court indicated that:

> Based upon all the files, records, affidavits, exhibits, written and oral arguments of counsel the Court considered the [appellants'] Motion as a Summary Judgment Motion for Dismissal of [respondent's] action. The Court finds that disputed facts exist as to whether the conduct of the [appellants] and each of them entitle them to immunity from liability to [respondent].

## ISSUE

Did the trial court err in denying appellants' motion?

## ANALYSIS

*Jurisdiction, Standard and Scope of Review*

■ Ordinarily, an order denying summary judgment is not appealable. Minn.R. Civ.App.P. 103.03. However, the claim of absolute prosecutorial immunity raised by appellants invokes jurisdiction of the appeal pursuant to *Anderson v. City of Hopkins,* 393 N.W.2d 363 (Minn.1986) (*"Anderson I"*). If appellants' claims of absolute prosecutorial immunity are, in fact, meritorious, our failure to address those claims at this pretrial stage would effectively destroy appellants' right to be immune from suit and, instead, would guarantee only their right to be immune from liability. Such limited immunity is not consistent with the grant of absolute prosecutorial immunity.

■ Appellants claim that because respondent Erickson relied only on his pleadings in resisting appellants' motions, appellants themselves are entitled to summary judgment. We cannot agree. We recognize, of course, that a nonmoving party must present affirmative evidence to defeat a summary judgment motion. However, the motion presented to Erickson was one for dismissal pursuant to Rule 12.02; it was not one for summary judgment. Further, the record does not disclose whether Erickson was "given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Minn.R.Civ.P. 12.02. The parties' memoranda addressed the motion to dismiss. At this early stage of this proceeding, it would be inappropriate to hold either party to a strict Rule 56 standard.

*Prosecutorial Immunity*

■ Prosecutors are absolutely immune from suit for acts within the scope of their

---

1. Erickson was indicted for conspiracy with the councilman to violate Minn.Stat. § 471.87 and for receiving unauthorized compensation in violation of Minn.Stat. § 609.45.

2. Usgaard is not a party to this appeal.

3. We note that the amended complaint, ordered later by the court, was included in the trial court file, but it does not constitute a portion of the record for this appeal.

duties of initiating and pursuing prosecution. *See Imbler v. Pachtman,* 424 U.S. 409, 420–27, 96 S.Ct. 984, 990–93, 47 L.Ed.2d 128 (1976). In a civil rights action for damages, a prosecutor does not have to defend prosecutorial mistakes if they occurred in the performance of a function inherent in the prosecutor's role as an advocate. *Myers v. Morris,* 810 F.2d 1437, 1446 (8th Cir.1987). This immunity depends upon the functional nature of the activities rather than upon the status of the prosecutor. *Id.*

The Minnesota Supreme Court defined and applied the *Imbler* rule that public prosecutors, when acting within the scope of their duties by filing and maintaining criminal charges, are absolutely immune from civil liability, in *Brown v. Dayton Hudson Corp.,* 314 N.W.2d 210, 214 (Minn. 1981). This court considered and applied *Imbler, Myers* and *Brown* in *Brotzler v. Scott County,* 427 N.W.2d 685 (Minn.Ct. App.1988), *pet. for rev. denied* (Sept. 16, 1988). Brotzler, after having been acquitted on charges of theft, brought suit against many of the same authorities who were the defendants in *Myers.* After the decision in *Myers,* the trial court granted summary judgment to all *Brotzler* defendants. On review, this court held that the prosecutor's conduct in *Brotzler* was analogous to her conduct in *Myers,* was essentially conduct inherent in the prosecutorial function, and thus was absolutely immune from suit.

*Anderson v. City of Hopkins,* 400 N.W.2d 350 (Minn.Ct.App.1987) ("*Anderson II*") provides guidance for our review here. In *Anderson II,* appellant police officers claimed they were entitled to qualified immunity under the objective test in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), which entitles police officers to summary judgment on civil rights claims if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. The trial court in *Anderson II* had failed to apply the *Harlow* objective test. This court remanded because, although the *Harlow* test itself is a question of law, the trial court

was more familiar with the record and better situated to make any findings necessary for application of that test. *Anderson II,* 400 N.W.2d at 355.

We cannot determine on the record before us what fact issues the trial court found in dispute. However, we conclude that the relief requested by appellants was that narrow relief encompassed within Rule 12.02. Therefore, appellants in this matter essentially asked the trial court to find that respondent had failed to state any cause of action upon which any relief could be granted. Within these narrow parameters, we are able to conduct meaningful review. Under the *Anderson* opinions, the only issue we address is whether respondent's claims are barred from suit, as a matter of law, because of absolute prosecutorial immunity. We examine each claim against each appellant for the limited purpose of determining whether, at this stage of the proceedings, that claim may survive a Rule 12 motion to dismiss.

*The Claims*

*Count I*

Count I, brought pursuant to 42 U.S.C. § 1983 against appellants Mickelberg, Shoop and Costello, alleges that appellants' participation in the secret grand jury deliberations violated Erickson's constitutional rights; that the participation of Mickelberg and Shoop was not within the scope of their prosecutorial functions and, therefore, they are not entitled to absolute prosecutorial immunity; and that neither Mickelberg and Shoop nor Costello are entitled to any qualified immunity because their conduct in participating in the grand jury deliberations was unreasonable and clearly exceeded established norms.

While Mickelberg's conduct before the grand jury may have violated the Minnesota Rules of Criminal Procedure, we view that conduct as intimately involved with the initiation and maintenance of a prosecutorial function. Even the dishonest or malicious performance of this function is absolutely immune from civil rights claims. *Imbler,* 424 U.S. at 427, 96 S.Ct. at 993. Thus, mistakes occurring in the perform-

ance of this function must be immune as well. Therefore, the claim set forth in Count I against appellant Mickelberg is barred from suit under *Imbler, Myers* and *Brown.* We reverse the decision of the trial court with respect to Count I against Mickelberg.

Shoop, in presenting to the grand jury the case against Erickson, was performing a prosecutorial function not unlike presentation of a case to a jury in a trial court of law. Because this is a prosecutorial function of initiating and maintaining prosecution under *Imbler, Myers* and *Brown,* we reverse the decision of the trial court with respect to Count I against Shoop.

In view of our resolution of the issue of absolute immunity as to Mickelberg and Shoop in Count I, we need not address the issue of their qualified immunity on that count.

■ Because Costello's involvement in the grand jury proceedings did not involve initiation and maintenance of prosecution, the immunities issues raised by him in connection with Count I cannot be resolved by application of the rationale of *Imbler, Myers* and *Brown.* Therefore, Costello is not absolutely immune from suit. Whether he has a qualified immunity must be determined by the trial court based on the evidence before it in subsequent proceedings in this case. *See Imbler,* 424 U.S. at 420 n. 13, 96 S.Ct. at 989 n. 13. The trial court properly denied appellant Costello's motion to dismiss the Count I claim against him.

### Count II

Count II, also brought pursuant to 42 U.S.C. § 1983, alleges that Mickelberg, Shoop and Costello violated the secrecy of grand jury proceedings by disclosing the substance and detail of these proceedings to the media; that Mickelberg and Shoop are not entitled to absolute prosecutorial immunity because this conduct was not within the scope of their prosecutorial duty; and that neither Mickelberg and Shoop nor Costello are entitled to any qualified immunity because their conduct in disclosing this information to the media was unreasonable and clearly exceeded established legal norms.

■ We cannot rule, as a matter of law, that conduct alleged in Count II is so inherent in the prosecutorial function of initiating and maintaining suit that it is protected by an absolute immunity. The question of whether Mickelberg and Shoop enjoy a qualified immunity under Count II is an issue that must be resolved by the trial court in subsequent proceedings. *See Imbler,* 424 U.S. at 420 n. 13, 96 S.Ct. at 989 n. 13. Consistent with our discussion of appellant Costello's possible qualified immunity under Count I, we also find the trial court properly denied his motion to dismiss Count II against him.

### Count III

Count III is a claim brought against Clay County also pursuant to 42 U.S.C. § 1983 and alleges the county's liability for a policy and practice of permitting Mickelberg and/or Shoop to act as policymakers and disseminate information about secret grand jury proceedings to the media.

Resolution of this issue is dependent upon resolution of Count II claims against Mickelberg and Shoop and must await resolution by the trial court. The trial court properly denied the requested dismissal of Count III.

### Count IV

■ Count IV alleges defamation by Mickelberg, Shoop and Costello on the basis that they published to the press and to private individuals false defamatory statements, either knowing they were false or in reckless disregard of the truth. These claims are sufficiently stated to survive the Rule 12 motions to dismiss. Here, too, issues of qualified immunity must be determined by the trial court at the time of further proceedings in this matter.[4] The

4. Appellants complain that the pleading of this claim lacks sufficient specificity. The trial court had ordered Erickson to amend his complaint to provide a more definite statement of the defamation, in response to a motion by defendant Usgaard. We note the appropriateness of that remedy as it might apply to appellants' concerns regarding Count IV.

trial court properly denied appellants' motion to dismiss Count IV.

### Counts V and VI

Counts V and VI allege defamation by Doe to Costello and malicious prosecution by Doe, respectively. Because we have no information regarding Doe's actual identity or function, we have no basis upon which to determine whether he is entitled to absolute prosecutorial immunity. Questions of qualified immunity must be answered by the trial court upon an expanded record. The trial court properly denied appellant Doe's motion to dismiss Counts V and VI.

Count VI also alleges a malicious prosecution claim against Costello. Whether Costello may be entitled to absolute prosecutorial immunity for investigatory conduct taken purely at the direction and under the control of the prosecutor or whether he may be entitled to qualified immunity will depend upon the function he was performing and upon the specific facts giving rise to the claim against him. The determination of what immunity, if any, is available to Costello on this count must be determined by the trial court. Denial of the motion to dismiss was proper.

### Count VII

Count VII alleges negligent supervision by Mickelberg of Shoop on the grounds that Mickelberg knew or should have known that Shoop was unable to comply with Minnesota rules in the conduct of grand jury proceedings. Because this claim could only have arisen, under the facts of this case, in connection with Shoop's initiation and maintenance of prosecution in the grand jury proceedings, Mickelberg is entitled to absolute immunity under *Imbler, Myers* and *Brown*. The trial court erred in denying the motion to dismiss Count VII.

### Count VIII

Count VIII alleges vicarious liability of Clay County for conduct of Costello. Resolution of this issue must rest upon resolution of the questions of Costello's immunities, if any. The trial court must make that determination based upon the facts. Denial of the motion to dismiss was proper.

### DECISION

A claim which is based upon a prosecutor's acts in the grand jury room during grand jury proceedings, involving conduct inherent in the prosecutorial function of initiating and maintaining prosecution, may not be maintained against a public prosecutor. The trial court's denial of Rule 12 motions to dismiss brought by appellants Mickelberg and Shoop in Count I is reversed, as is its denial of Rule 12 motion to dismiss Count VII against appellant Mickelberg. The trial court's denial of motions to dismiss Count I against Costello and as to Counts II, III, IV, V, VI and VIII is affirmed.

Affirmed in part and reversed in part.