Conto v. Concord Hospital, Inc.          CV-99-166-JD  09/10/99
                    UNITED STATES DISTRICT COURT FOR THE
                            DISTRICT OF NEW HAMPSHIRE

Carol Conto

        v.                                    Civil No. 99-166-JD

Concord Hospital, Inc.


                              O R D E R


                             Background

    Carol Conto filed suit against her former employer, Concord

Hospital, alleging sexual harassment, gender discrimination, age

discrimination, and assault and battery.  The sexual harassment

and assault and battery claims stem from alleged conduct that

occurred during her employment, while the gender and age

discrimination claims are based on Concord Hospital's termination

of Conto's employment.  Concord Hospital moves to dismiss all

claims under Federal Rule of Civil Procedure 12(b)(6).  Conto

objects.


                         Standard of Review

    The defendant, Concord Hospital, moves to dismiss pursuant

to Rule 12(b)(6).  Because Concord Hospital filed an answer on

the same day it filed this motion, the pleadings are closed and

the court will treat Concord Hospital's motion to dismiss as a

motion for judgment on the pleadings.  See Fed. R. Civ. P. 12(c).

The standard for evaluating a Rule 12(c) motion is essentially the same as the standard for evaluating a 12(b)(6) motion. See Preyer v. Dartmouth College, 968 F. Supp. 20, 23 (D.N.H. 1997). "In both cases, the court's inquiry is a limited one, focusing not on 'whether a plaintiff will ultimately prevail but whether [he or she] is entitled to offer evidence to support the claims.'" Id. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). "[T]he court must accept all of the factual averments contained in the complaint as true, and draw every reasonable inference in favor of the plaintiffs." Id. (citing Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992) (Rule 12(b)(6)); Santiago de Castro v. Morales Medina, 943 F.2d 129, 130 (1st Cir. 1991) (Rule 12(c))). "[T]he court may not enter judgment on the pleadings unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief.'" Id. (quoting Santiago de Castro, 943 F.2d at 130).

Discussion

A.    Count I – Sexual Harassment

    1.    Sufficiency of Claim

    Under Title VII, it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against

any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a). Sexual harassment constitutes unlawful discrimination on the basis of sex under Title VII. See Meritor Sav. Bank v. Vinson, 477 U.S. 57, 66 (1986); Provencher v. CVS Pharmacy, 145 F.3d 5, 13 (1st Cir. 1998).

Sexual harassment in the workplace has traditionally been analyzed under one of two rubrics, quid pro quo harassment or hostile work environment. See Wills v. Brown University, 184 F.3d 20, 25 (1st Cir. 1999). The Supreme Court altered this framework somewhat with its recent opinions in Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998), and Faragher v. City of Boca Raton, 524 U.S. 775 (1998). The Court characterized quid pro quo as harassment that results in a tangible employment action, and hostile work environment as harassment that precedes, or does not result in, a tangible employment action.[1] See Burlington, 524 U.S. at 754. Hostile work environment "requires a showing of severe or pervasive conduct," such that it

---

[1]"A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington, 524 U.S. at 761.

3

constitutes a change in the terms and conditions of employment. Id.; see also Meritor, 477 U.S. at 67. The phrase "terms and conditions of employment" is not limited to the meaning of these words in a contractual sense, and may apply where an abusive working environment is created. See Faragher, 524 U.S. at 786 (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998)). The work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher, 524 U.S. at 775 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993)). In deciding whether harassment is actionable under Title VII, the court must consider the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 787-88 (quoting Harris, 510 U.S. at 23); see also Brown v. Hot, Sexy and Safer Prods., Inc., 68 F.3d 525, 540 (1st Cir. 1995) (applying Title VII analysis to Title IX case).

Conto alleges that "during her 4 ½ years as an employee in the Security Department, she was regularly subjected to disgusting and offensive language, including swear words, and

4

words sexual in nature, offensive body language and hand gestures, and disgusting jokes of an obscene and sexual orientation." She also describes several specific instances of conduct committed by her coworkers and a supervisor. She claims that a coworker pulled her against him by grabbing her pants; coworkers asked her about her sex life; a coworker rubbed her lower leg; and her coworkers and a supervisor slapped her buttocks. She says that her supervisors were aware of this behavior and that one of them participated in it. Conto says that these incidents created an ongoing hostile work environment.[2] The court can infer, assuming these facts are true, that Conto experienced severe or pervasive conduct that created an abusive working environment. Therefore, Conto's allegations satisfy the minimal pleading requirements to state a Title VII claim based on hostile work environment.

An employer can be held liable for sexual harassment of an employee by her coworkers if the employer knew or should have known of the harassment's occurrence, unless the employer took appropriate steps to halt the harassment. See Lipsett v. University of Puerto Rico, 864 F.2d 881, 901 (1st Cir. 1988)

---

[2]Conto's allegations appear in nearly identical form in both the EEOC charge and her amended complaint. Therefore, Concord Hospital's argument that Conto attempts now to raise a claim that she did not raise in her EEOC charge is unfounded.

(Title IX context); 29 C.F.R. § 1604.11(d).  When a supervisor harasses a subordinate, an employer can be held vicariously liable even without knowledge of the harassment.[3]  See Burlington, 524 U.S. at 765; Faragher, 524 U.S. at 807.

Conto alleges that she complained to her supervisors of the harassment.  Whether she complained to the appropriate individuals and what steps the employer did or did not take to address the problem are issues beyond the scope of a 12(c) motion.  Conto has alleged sufficient facts to survive a motion for judgment on the pleadings.

2.  Timeliness of Filing

Title VII obligates a plaintiff to exhaust administrative remedies before filing suit in federal court.  See 42 U.S.C.A. § 2000e-5; Lawton v. State Mut. Life Assurance Co. of Am., 101 F.3d 218, 221 (1st Cir. 1996).  Federal law requires a complainant to file a charge with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the discriminatory act, unless the complainant can file with an authorized state agency, in which case the deadline may be extended to 300 days.  See 42 U.S.C.A. §

---

[3]When no tangible employment action occurs as a result of the harassment, the employer may raise an affirmative defense. See Burlington, 524 U.S. at 765; Faragher, 524 U.S. at 807-08.

6

2000e-5(e)(1); EEOC v. Commercial Office Prods. Co., 486 U.S. 107, 110 (1988); Provencher v. CVS Pharmacy, 145 F.3d 5, 13 (1st Cir. 1998).

New Hampshire's authorized fair employment practices agency, the New Hampshire Commission for Human Rights ("NHCHR"), exercises concurrent jurisdiction with the EEOC over certain employment discrimination claims, thereby triggering application of the 300-day rule for timeliness of filing these claims. See Bergstrom v. University of New Hampshire, 959 F. Supp. 56, 59 (D.N.H. 1996). However, the NHCHR claimed lack of subject matter jurisdiction over Conto's claim because Concord Hospital is a not-for-profit organization.[4] See N.H. Rev. Stat. Ann. § ("RSA") 354-A:2, VII. "When a state has an authorized agency, but the state agency lacks subject matter jurisdiction to consider a claim brought in a complaint, the state agency is treated, for that claim, as if no agency existed, and the 180-day rule

_____

[4]While the court may not generally consider documents outside the pleadings under a 12(c) analysis, exceptions may be made for documents attached to the complaint and for official public records or documents whose authenticity is not disputed by the parties. See Preyer, 968 F. Supp. at 23 n.3; Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). The court considers Conto's charge to the EEOC, as well as correspondence from the NHCHR and the EEOC to Conto, under these exceptions.

applies."[5]  <u>Russell v. Easter Seals Soc'y of New Hampshire, Inc.</u>, 1997 WL 837961, at *2 (D.N.H. Dec. 10, 1997) (citations omitted). The question remains as to whether, for purposes of the timeliness requirement, a state agency can receive a charge as an agent of the EEOC even if the state agency itself lacks jurisdiction over the charge.  <u>See Russell</u>, 1997 WL 837961, at *2; <u>Silva v. Universidad de Puerto Rico</u>, 849 F. Supp. 829, 830-32 (D.P.R. 1994).

The answer depends on the content of the work-sharing agreement between the EEOC and the state agency.  <u>See Silva</u>, 849 F. Supp. at 831-32.  In the past, the NHCHR and the EEOC have entered into work-sharing agreements that authorize each agency to serve as the other's agent for the purposes of receiving charges and determining timeliness of filing.  <u>See, e.g.</u>, <u>Madison v. St. Joseph Hosp.</u>, 949 F. Supp. 953, 958 (D.N.H. 1996) (discussing 1994 work-sharing agreement); <u>Bergstrom</u>, 959 F. Supp.

_____

[5]The relevant regulation reads:
> A jurisdiction having a FEP [fair employment practices] agency without subject matter jurisdiction over a charge (e.g., an agency which does not cover sex discrimination or does not cover nonprofit organizations) is equivalent to a jurisdiction having no FEP agency.  Charges over which a FEP agency has no subject matter jurisdiction are filed with the Commission upon receipt and are timely filed if received by the Commission within 180 days from the date of the alleged violation.

29 C.F.R. § 1601.13(a)(2).

at 59 (discussing 1993 work-sharing agreement). A work-sharing agreement can permit a state agency to act as the EEOC's agent even when the state agency lacks subject matter jurisdiction. See, e.g., Silva, 849 F. Supp. at 831 (interpreting work-sharing agreement between EEOC and Puerto Rico). Concord Hospital failed to file a copy of the work-sharing agreement in effect in September of 1998, when Conto filed her charge with the NHCHR, and therefore has not shown that Conto's filing with the NHCHR did not constitute a filing with the EEOC.

Conto filed a charge with the NHCHR within 180 days of the termination of her employment.[6] As discussed above, Conto alleges that she was sexually harassed for the duration of her employment. Applying the theory of serial violation, the court can infer from the facts alleged that Conto suffered a chain of discriminatory acts, all arising from the same discriminatory animus, at least some of which occurred during the statute of limitations period for filing an EEOC charge. See Provencher, 145 F.3d at 14. Because Conto filed her charge with the NHCHR within 180 days of her last day of work, and because this filing

_____

[6]Conto was terminated from her employment with Concord Hospital on March 12, 1998. On September 4, 1998, she filed a charge with the NHCHR, which then forwarded her charge to the EEOC. The EEOC notified Conto of its receipt of the charge on September 30, 1998.

9

could have constituted a dual filing with the EEOC, Concord Hospital has not shown that it is entitled to judgment on the pleadings for lack of timeliness.

B.    Counts II and III – Discrimination Based on Gender and Age

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's sex."  42 U.S.C.A. § 2000e-2(a)(1).  Similarly, the Age Discrimination in Employment Act ("ADEA") forbids an employer "to discharge any individual . . . because of such individual's age."  29 U.S.C.A. § 623(a)(1).

Conto alleges that Concord Hospital discriminated against her on the bases of gender and age when it fired her.  In support of her claim, Conto alleges that she was one of a few women employed as a security guard at the hospital, and the only one who worked full-time.  At 58, she was the oldest woman working in security, and was treated differently from the younger employees.  In over four years working as a security guard she received no written disciplinary reports until a new director of hospital security was hired, after which she received three reports in quick succession and was subsequently fired.  She was unaware of other employees receiving disciplinary reports.  Conto's

10

coworkers told her they did not want to work with someone old or with a woman who could not do the job.

Under the minimal pleading requirements applicable at this stage of litigation, Conto's allegations survive a motion for judgment on the pleadings.[7]

C.    Count IV – Assault and Battery

Conto alleges that the physical portion of the sexual harassment she endured constitutes common law assault and battery.  Concord Hospital argues that this claim is barred by New Hampshire's worker's compensation statute.

This court has repeatedly and consistently ruled that claims of intentional tort against an employer are barred by the exclusivity provision of the New Hampshire worker's compensation statute, RSA 281-A:8, I.  See, e.g., Holland v. Chubb Am. Serv. Corp., 944 F. Supp. 103, 105 (D.N.H. 1996); Miller v. CBC Cos., Inc., 908 F. Supp. 1054, 1068 (D.N.H. 1995).  The statute allows

_____

[7]The court notes that it does not apply the familiar McDonnell Douglas burden-shifting framework for the purpose of deciding this motion for judgment on the pleadings, as that process is more appropriate for addressing a motion for summary judgment.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973); Byrd v. Ronayne, 61 F.3d 1026, 1030-31 (1st Cir. 1995) (applying framework to gender discrimination); Alvarez-Fonseca v. Pepsi Cola of Puerto Rico, 152 F.3d 17, 24 (1st Cir. 1998) (applying framework to age discrimination).

11

plaintiffs to proceed with claims of intentional tort against other employees, but not against an employer. See RSA 281-A:8, I. Therefore, Conto's claim against Concord Hospital for assault and battery is barred by the statute.

## Conclusion

For the foregoing reasons, the court treats Concord Hospital's motion to dismiss (document no. 16) as a motion for judgment on the pleadings. The motion is granted with respect to Count IV, assault and battery, and is otherwise denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

November 10, 1999

cc:   Charles A. Russell, Esquire
      Kathleen C. Peahl, Esquire

12